**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | | |
|---|---|---|
| **LUKE A. HOLLEY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| **DR. MARK T. ESPER, in his official** | § | |
| **capacity as the acting SECRETARY OF** | § | JURY DEMANDED |
| **DEFENSE,** | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW Plaintiff, LUKE A. HOLLEY, and files this, his Original Complaint, complaining of the actions of Defendant DR. MARK T. ESPER, in his official capacity as the acting SECRETARY OF DEFENSE. In support of this action, Plaintiff would show unto this Honorable Court the following:

**PARTIES**

1. Plaintiff LUKE A. HOLLEY is an individual residing in Wake Village, Bowie County, Texas. At all times relevant to this lawsuit, Plaintiff was an employee of the Defense Logistics Agency ("DLA"), a federal agency and component of the Department of Defense. At all times relevant to this lawsuit, Plaintiff worked for DLA at a distribution facility physically located within the Red River Army Depot ("RRAD") in Bowie County, Texas.

2. As a lawsuit brought pursuant to the Rehabilitation Act, the proper defendant is the head of the department, agency, or unit, as appropriate. *Honeycutt v. Long*, 861 F.2d 1346, 1349 (5th Cir. 1988) (quotation omitted). Accordingly, DR. MARK T. ESPER is sued in his official

capacity as the acting SECRETARY OF DEFENSE for the United States of America. Defendant may be served with process by delivering a copy of the summons and complaint in this lawsuit to the Honorable Paul C. Ney, Jr., General Counsel of the Department of Defense, 3030 Defense Pentagon, Washington, D.C. 20301-3030 (32 C.F.R. § 257.5(a)) and/or mailing a copy of the summons and complaint by certified mail to Dr. Mark T. Esper, Secretary of Defense, 1000 Defense Pentagon, Washington, D.C. 20301-1000 (28 U.S.C. § 1391(e)(2)).

## JURISDICTION

3. This Court has jurisdiction to hear this action by reason of 28 U.S.C. § 1331 (federal question) because DLA's conduct as alleged herein violated Sections 501 (29 U.S.C. § 791) and 504 (29 U.S.C. §§ 794 – 794a) of the Rehabilitation Act.

## VENUE

4. Pursuant to 28 U.S.C. § 1391(e)(1)(B), venue is proper in this Judicial District because a substantial part of the events or omissions giving rise to these claims occurred in the Eastern District of Texas.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. Beginning in March of 2019 and continuing thereafter, Plaintiff was subjected to systematic discrimination, harassment, and retaliation because of his disability and because he engaged in protected activity, including making a request for a reasonable accommodation because of a physical disability. On June 12, 2019 (while DLA's discrimination, harassment, and retaliation were on-going), Plaintiff timely initiated informal counseling with an EEO Counselor at DLA Red River. After receiving a "right-to-file" notice on August 6, 2019, Plaintiff timely filed a *Formal Complaint of Discrimination in the Federal Government* with the DLA EEO Office in New Cumberland, Pennsylvania on August 16, 2019. DLA's EEO Office failed to

complete its investigation of the formal complaint within the allotted time, and, on May 20, 2020, DLA's EEO Office issued a notice pursuant to 29 CFR § 1614.108(g) indicating that the investigation would not be completed on time and granting Plaintiff the right to file a civil action in United States District Court. A true and correct copy of the May 20, 2020 notice is attached hereto as Exhibit "A" and incorporated by reference herein.

## FACTS SUPPORTING RELIEF

6. Plaintiff LUKE A. HOLLEY is a 10-point, 80% service-connected disabled veteran. Plaintiff served in the United States Coast Guard from 2002 until 2007 and suffered a broken back while on active duty.

7. On or about June 25, 2018, Plaintiff hired into DLA's RRAD distribution facility near Texarkana, Texas. Plaintiff was hired as a "Distribution Process Worker WG-6901-05" under a non-competitive "Excepted Appointment" procedure because of his status as a disabled veteran.

8. From his hired date until October 2018, Plaintiff worked as a warehouse worker for DLA. In October 2018, Plaintiff's work duties changed, and those new duties included operating a forklift the entire workday and entire workweek. Because of his medical conditions and disabilities associated with the injuries to his back, the ride and repetitive movements associated with operating a forklift for that amount of time (*i.e.*, all workday, every workday) caused Plaintiff great physical discomfort.

9. On December 6, 2018, Plaintiff filed a request for a reasonable accommodation with DLA. After explaining the issues with his back and the pain he experienced from having to operate a forklift all workday every workday, Plaintiff requested as a reasonable accommodation: (1) reassignment to another job with different job duties; and (2) access to the gym at his workplace one hour mid-day to stretch his back.

10. Despite the fact that Plaintiff had hired in at DLA's RRAD distribution facility as an "Excepted Appointment" because of his status as a disabled veteran (thereby making Plaintiff's disability already known to DLA), DLA responded to Plaintiff's request for a reasonable accommodation by requesting medical documentation of Plaintiff's medical conditions because DLA claimed Plaintiff's disability was "not obvious or otherwise already known" to DLA.

11. Despite the fact that Plaintiff's disability was already known to DLA and contrary to DLA's own internal policies and procedures, it took DLA fifty-three (53) days (from December 6, 2018 until January 29, 2019) to provide Plaintiff with a "Certificate of Medical Examination" form needed from Plaintiff's treating physician, so that his treating physician could then communicate the diagnosis, prognosis, and impact of Plaintiff's medical conditions and disabilities to DLA.

12. Despite DLA's delay in providing the necessary medical documentation form, Plaintiff returned the completed form to DLA on February 5, 2019. In completing the form, Plaintiff's treating physician described Plaintiff limiting conditions as: (1) no heavy lifting defined as over 20 pounds; (2) no forklift duty over four hours per day; and (3) no squatting or bending more than two hours per day.

13. Contrary to DLA's own internal policies and procedures, Plaintiff's work limitations were never communicated to Plaintiff's direct supervisors after DLA received the medical documentation form.

14. Meanwhile, as Plaintiff navigated DLA's request for medical documentation, Plaintiff also tried, as a part of his reasonable accommodation request efforts, to apply for different jobs with different job duties. From January 2019 through April 2019, DLA denied Plaintiff job

interviews for job vacancies in retaliation and reprisal for Plaintiff having made a request for a reasonable accommodation.

15. As further retaliation and reprisal against Plaintiff for having filed a request for a reasonable accommodation, DLA's management, on March 14, 2019, started in earnest down a path of systematic harassment and abuse aimed at Plaintiff. On that day, Plaintiff's supervisor denied Plaintiff access to the gym to stretch his back. Also on that day, Plaintiff's direct supervisor approved a request for Plaintiff to receive a new pair of work boots, only to have that request later refused by a supervisor higher up the chain of command.

16. As the discrimination, retaliation, and harassment continued, Plaintiff was reassigned to a job position on April 29, 2019 with job duties and requirements that forced Plaintiff to violate his lifting, squatting, and bending restrictions in order to keep his job.

17. On June 12, 2019, Plaintiff was again reassigned to a new job position – this time with even worse job duties. Again, DLA forced Plaintiff to perform job duties that violated his medical conditions and work limitations to keep his job. Also on June 12, 2019, Plaintiff began informal counseling with an EEO Counselor at DLA in order to ultimately file a discrimination claim against his employer.

18. As a part of his June 2019 reassignment, Plaintiff's supervisors and his new co-workers held a morning meeting on June 20, 2019 to discuss Plaintiff's arrival. During the meeting, a co-worker questioned management by asking, "Why do we always get disabled people over here to help us out? We need abled bodied people working here." Management did not respond to the statement other than to say Plaintiff was "going to be working hard," but another co-worker later warned Plaintiff that, as a result of the meeting, "you better watch out, they are on you."

19. In July 2019, Plaintiff was placed on a special two-week detail emptying an entire portable building and warehouse filled with old printers, fax machines, monitors, and other computer equipment. The portable building and warehouse were not airconditioned, and DLA again required Plaintiff to violate his lifting, squatting, and bending restrictions.

20. On July 23, 2019, Plaintiff's supervisors confiscated a radio, fan, and ergonomic chair from Plaintiff – as further retaliation for Plaintiff having filed a reasonable accommodation request and EEO informal complaint. Later, Plaintiff was told he could have a fan while he worked (in Texas in July), but only if he amended his reasonable accommodation request to include a request for a fan. Likewise, he was told he could also have an ergonomic chair for his back (even though DLA had an abundance of these chairs at its RRAD facility), but only if he amended his reasonable accommodation request to include a chair too.

21. Since filing the EEO informal complaint in June 2019, Plaintiff has also had a supervisor at DLA park diagonally across three parking spots to prevent Plaintiff from parking in his accustomed parking spot, report him as AWOL (when he was not), and physically search him "randomly" for a cell phone.

22. On August 16, 2019, Plaintiff filed a *Formal Complaint of Discrimination in the Federal Government* with the DLA EEO Office in New Cumberland, Pennsylvania. At roughly the same time as the filing of that formal complaint, DLA's supervisor at the RRAD facility attempted to reprimand Plaintiff (in retaliation for the complaint) on four different occasions for four minor infractions, including an accusation that Plaintiff failed to work on the correct assignment (August 9, 2019), an accusation that Plaintiff had failed to shrink wrap two pallets (August 15, 2019), an accusation that Plaintiff was smoking during duty hours in an

unauthorized location (August 16, 2019), and an accusation that Plaintiff had failed to timely request sick leave to attend a medical appointment (August 20, 2019).

23. Also on August 16, 2019, Plaintiff's direct supervisor had a meeting with Plaintiff and his co-workers. During that meeting, the supervisor made the statement that "what happens here stays here," and then attempted to force every worker, including Plaintiff, to verbally confirm their agreement with the statement. Considering the timing of the meeting and the larger context of Plaintiff's EEO complaint and reasonable accommodation request, this meeting was conducted as an effort to intimidate and silence Plaintiff – all in the hopes of stopping him from filing his formal complaint.

## CAUSES OF ACTION

### A.
### DISABILITY DISCRIMINATION
### (SECTION 501 OF THE REHABILITATION ACT)

24. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 23 as if fully set forth herein.

25. Defendant's discrimination, retaliation, and harassment directed towards Plaintiff solely because of his disability violated Section 501 of the Rehabilitation Act (29 U.S.C. § 791).

26. During all times relevant hereto, Plaintiff suffered from a disability, had a record of having a disability, and was regarded as disabled. Namely, Plaintiff is a 10-point, 80% service-connected disabled veteran with a pre-existing back condition that was hired on at DLA under a non-competitive "Excepted Appointment" procedure because of his disabled-veteran status.

27. During all times relevant hereto, Plaintiff was qualified for his job despite his pre-existing back condition – in that he could complete his job duties with reasonable accommodation (and sometimes still completed his job duties even when his reasonable accommodation request and medical restrictions were not honored by Defendant).

28. Plaintiff was subjected to an adverse employment action due to his disability and the perception of his disability. As detailed herein, DLA subjected Plaintiff to numerous instances of discrimination, retaliation, and harassment after Plaintiff made a request for a reasonable accommodation and because of his disability.

29. Accordingly, Plaintiff was treated less favorably than non-disabled employees.

## B.
### DISABILITY DISCRIMINATION
### (SECTION 504 OF THE REHABILITATION ACT)

30. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 29 as if fully set forth herein.

31. Defendant's discrimination, retaliation, and harassment directed towards Plaintiff solely because of his disability violated Section 504 of the Rehabilitation Act (29 U.S.C. §§ 794 – 794a).

32. During all times relevant hereto, Plaintiff suffered from a disability, had a record of having a disability, and was regarded as disabled. Namely, Plaintiff is a 10-point, 80% service-connected disabled veteran with a pre-existing back condition that was hired on at DLA under a non-competitive "Excepted Appointment" procedure because of his disabled-veteran status.

33. During all times relevant hereto, Plaintiff was qualified for his job despite his pre-existing back condition – in that he could complete his job duties with reasonable accommodation (and sometimes still completed his job duties even when his reasonable accommodation request and medical restrictions were not honored by Defendant).

34. Plaintiff was subjected to an adverse employment action due to his disability and the perception of his disability. As detailed herein, DLA subjected Plaintiff to numerous instances of

discrimination, retaliation, and harassment after Plaintiff made a request for a reasonable accommodation and because of his disability.

35. Accordingly, Plaintiff was treated less favorably than non-disabled employees.

## C.
### RETALIATION/REPRISAL DISCRIMINATION

36. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 35 as if fully set forth herein.

37. Defendant's retaliation and reprisal directed towards Plaintiff violated Sections 501 and 504 of the Rehabilitation Act (29 U.S.C. §§ 791, 794 – 794a).

38. On December 6, 2018, Plaintiff filed a request for a reasonable accommodation with DLA, on June 12, 2019, Plaintiff made an informal complaint with an EEO counselor at DLA, and, on August 16, 2019, Plaintiff filed a *Formal Complaint of Discrimination in the Federal Government* with the DLA EEO Office in New Cumberland, Pennsylvania. These actions constituted "protected activity" under the Rehabilitation Act.

39. Because Plaintiff engaged in these "protected activities," DLA subjected Plaintiff to the numerous instances of discrimination, retaliation, and harassment as detailed herein.

40. Moreover, a "causal connection" exists between the "protected activities" and the numerous instances of discrimination, retaliation, and harassment detailed herein because (1) Plaintiff did not experience or endure any such conduct until after he filed a request for a reasonable accommodation and (2) statements from superiors and co-workers specifically indicate Plaintiff's disability and "protected activities" have been the motivating factor behind DLA's discrimination, retaliation, and harassment.

## D.
## HARASSMENT/HOSTILE WORK ENVIRONMENT

41. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 40 as if fully set forth herein.

42. Defendant's harassment directed towards Plaintiff violated Sections 501 and 504 of the Rehabilitation Act (29 U.S.C. §§ 791, 794 – 794a).

43. As a 10-point, 80% service-connected disabled veteran, Plaintiff belongs to a protected group of individuals because of his disability.

44. As detailed herein, Plaintiff has been subjected to unwelcome instances of harassment on numerous occasions.

45. The harassment Plaintiff now complains of was based solely on his disability because (1) Plaintiff did not experience or endure any such conduct until after he filed a request for a reasonable accommodation and (2) statements from superiors and co-workers specifically indicate Plaintiff's disability and "protected activities" have been the motivating factor behind DLA's discrimination, retaliation, and harassment.

46. The harassment Plaintiff now complains of affected and altered Plaintiff's terms, conditions, and privileges of employment, in that, during those periods of harassment, the behavior was so pervasive and severe that it created an abusive working environment.

47. Based on the fact that supervisors oftentimes perpetrated the harassment Plaintiff endured (as well as the statements made by Plaintiff's supervisors and co-workers), DLA either knew or should have known of the harassment, but failed to take prompt, remedial action.

## DAMAGES

48. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 47 as if fully set forth herein.

49. By reason of Defendant's violations of the Rehabilitation Act, Plaintiff is entitled to an award of compensatory damages, including an award for past and future emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary damages pursuant to 42 U.S.C. § 1981a(b)(3).

50. By reason of Defendant's violations of the Rehabilitation Act, Plaintiff is also entitled to an award of reasonable attorneys' fees incurred in pursuit of these claims pursuant to 29 U.S.C. § 794a(b) and 29 CFR § 1614.501.

51. Plaintiff also seeks recovery of all interest available to him.

## JURY DEMAND

Plaintiff demands a trial by jury for all issues of fact to be decided by a trier of fact.

## RIGHT TO REPLEAD

Plaintiff specifically reserves the right to replead, and/or plead further, in order to bring his Original Complaint into conformity with the law or facts as the case develops.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that, upon final hearing, Plaintiff have and recover judgment of and from the Defense Logistics Agency by and through Defendant DR. MARK T. ESPER, in his official capacity as the acting SECRETARY OF DEFENSE for compensatory damages, interest, and attorneys' fees, as more particularly described herein, and for such other and further relief to which Plaintiff may show himself justly and properly entitled, whether at law or equity.

        Respectfully submitted,

        **JONATHAN R. PRAZAK**

        **LAW OFFICE OF JONATHAN R. PRAZAK, PLLC**
        620 West 3rd Street, Suite 404
        Little Rock, Arkansas 72201
        (501) 263-1800 (Telephone)
        (479) 340-0041 (Facsimile)
        jprazak@prazaklaw.com

By:   /s/Jonathan R. Prazak
        JONATHAN R. PRAZAK
        Tex. Bar No. 24072288