IN THE UNITED STATES DISTRICT COURT
OF THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| **LUKE A. HOLLEY** § | |
| § | |
| **v.** § | |
| § | **Case No. 5:20-cv-93-CMC** |
| **DR. MARK T. ESPER, in his official** § | |
| **capacity as the acting SECRETARY OF** § | |
| **DEFENSE** § | |

## ORDER

On November 19, 2020, the above-entitled and numbered cause of action was referred to the undersigned for all purposes by the consent of the parties. The following motion is pending before the Court:

**Defendant's Motion to Compel (Docket Entry # 25)**

The Court, having carefully considered the relevant briefing, is of the opinion the motion should be **GRANTED**, as modified herein.

### I. FACTUAL BACKGROUND

On June 2, 2020, Plaintiff Luke A. Holley ("Plaintiff") filed a complaint alleging disability discrimination, retaliation, and harassment pursuant to the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq*. Plaintiff was an employee of the Defense Logistics Agency ("DLA") at a distribution facility within the Red River Army Depot ("RRAD") in Bowie County, Texas at all times relevant to this lawsuit.[1] Docket Entry #1, ¶ 1. DLA is a federal agency and component of the Department of

---

[1] According to the original complaint, Plaintiff "is a 10-point, 80% service-connected disabled veteran." Docket Entry # 1, ¶ 6. "Plaintiff served in the United States Coast Guard from 2002 until 2007 and suffered a broken back while on active duty." *Id*. "On or about June 25, 2018, Plaintiff hired into DLA's RRAD distribution facility near Texarkana,

Defense. *Id*. Defendant, the Secretary of Defense, is the head of the Department of Defense and "[s]ubject to the direction of the President and to this title and section 2 of the National Security Act of 1947 . . . has authority, direction, and control over the Department of Defense." 10 U.S.C. § 113(b).

According to Plaintiff, beginning in March of 2019 and continuing thereafter, "Plaintiff was subjected to systematic discrimination, harassment, and retaliation because of his disability and because he engaged in protected activity, including making a request for a reasonable accommodation because of a physical disability." Docket Entry # 1, ¶ 5. Specifically, Plaintiff alleges as follows:

> From his hired date until October 2018, Plaintiff worked as a warehouse worker for DLA. In October 2018, Plaintiff's work duties changed, and those new duties included operating a forklift the entire workday and entire workweek. Because of his medical conditions and disabilities associated with the injuries to his back, the ride and repetitive movements associated with operating a forklift for that amount of time (*i.e.*, all workday, every workday) caused Plaintiff great physical discomfort.
>
> On December 6, 2018, Plaintiff filed a request for a reasonable accommodation with DLA. After explaining the issues with his back and the pain he experienced from having to operate a forklift all workday every workday, Plaintiff requested as a reasonable accommodation: (1) reassignment to another job with different job duties; and (2) access to the gym at his workplace one hour mid-day to stretch his back.
>
> Despite the fact that Plaintiff had hired in at DLA's RRAD distribution facility as an 'Excepted Appointment' because of his status as a disabled veteran (thereby making Plaintiff's disability already known to DLA), DLA responded to Plaintiff's request for a reasonable accommodation by requesting medical documentation of Plaintiff's medical conditions because DLA claimed Plaintiff's disability was 'not obvious or otherwise already known' to DLA.
>
> Despite the fact that Plaintiff's disability was already known to DLA and contrary to DLA's own internal policies and procedures, it took DLA fifty-three (53) days (from

---

Texas. Plaintiff was hired as a 'Distribution Process Worker WG-6901-05' under a non-competitive 'Excepted Appointment' procedure because of his status as a disabled veteran." *Id.*, ¶ 7.

December 6, 2018 until January 29, 2019) to provide Plaintiff with a 'Certificate of Medical Examination' form needed from Plaintiff's treating physician, so that his treating physician could then communicate the diagnosis, prognosis, and impact of Plaintiff's medical conditions and disabilities to DLA.

Despite DLA's delay in providing the necessary medical documentation form, Plaintiff returned the completed form to DLA on February 5, 2019. In completing the form, Plaintiff's treating physician described Plaintiff limiting conditions as: (1) no heavy lifting defined as over 20 pounds; (2) no forklift duty over four hours per day; and (3) no squatting or bending more than two hours per day.

Contrary to DLA's own internal policies and procedures, Plaintiff's work limitations were never communicated to Plaintiff's direct supervisors after DLA received the medical documentation form.

Meanwhile, as Plaintiff navigated DLA's request for medical documentation, Plaintiff also tried, as a part of his reasonable accommodation request efforts, to apply for different jobs with different job duties. From January 2019 through April 2019, DLA denied Plaintiff job interviews for job vacancies in retaliation and reprisal for Plaintiff having made a request for a reasonable accommodation.

As further retaliation and reprisal against Plaintiff for having filed a request for a reasonable accommodation, DLA's management, on March 14, 2019, started in earnest down a path of systematic harassment and abuse aimed at Plaintiff. On that day, Plaintiff's supervisor denied Plaintiff access to the gym to stretch his back. Also on that day, Plaintiff's direct supervisor approved a request for Plaintiff to receive a new pair of work boots, only to have that request later refused by a supervisor higher up the chain of command.

As the discrimination, retaliation, and harassment continued, Plaintiff was reassigned to a job position on April 29, 2019 with job duties and requirements that forced Plaintiff to violate his lifting, squatting, and bending restrictions in order to keep his job.

On June 12, 2019, Plaintiff was again reassigned to a new job position – this time with even worse job duties. Again, DLA forced Plaintiff to perform job duties that violated his medical conditions and work limitations to keep his job. Also on June 12, 2019, Plaintiff began informal counseling with an EEO Counselor at DLA in order to ultimately file a discrimination claim against his employer.

As a part of his June 2019 reassignment, Plaintiff's supervisors and his new co-workers held a morning meeting on June 20, 2019 to discuss Plaintiff's arrival. During the meeting, a co-worker questioned management by asking, 'Why do we always get disabled people over here to help us out? We need abled bodied people working here.' Management did not respond to the statement other than to say

> Plaintiff was 'going to be working hard,' but another co-worker later warned Plaintiff that, as a result of the meeting, 'you better watch out, they are on you.'
>
> In July 2019, Plaintiff was placed on a special two-week detail emptying an entire portable building and warehouse filled with old printers, fax machines, monitors, and other computer equipment. The portable building and warehouse were not airconditioned, and DLA again required Plaintiff to violate his lifting, squatting, and bending restrictions.
>
> On July 23, 2019, Plaintiff's supervisors confiscated a radio, fan, and ergonomic chair from Plaintiff – as further retaliation for Plaintiff having filed a reasonable accommodation request and EEO informal complaint. Later, Plaintiff was told he could have a fan while he worked (in Texas in July), but only if he amended his reasonable accommodation request to include a request for a fan. Likewise, he was told he could also have an ergonomic chair for his back (even though DLA had an abundance of these chairs at its RRAD facility), but only if he amended his reasonable accommodation request to include a chair too.
>
> Since filing the EEO informal complaint in June 2019, Plaintiff has also had a supervisor at DLA park diagonally across three parking spots to prevent Plaintiff from parking in his accustomed parking spot, report him as AWOL (when he was not), and physically search him 'randomly' for a cell phone.
>
> On August 16, 2019, Plaintiff filed a *Formal Complaint of Discrimination in the Federal Government* with the DLA EEO Office in New Cumberland, Pennsylvania. At roughly the same time as the filing of that formal complaint, DLA's supervisor at the RRAD facility attempted to reprimand Plaintiff (in retaliation for the complaint) on four different occasions for four minor infractions, including an accusation that Plaintiff failed to work on the correct assignment (August 9, 2019), an accusation that Plaintiff had failed to shrink wrap two pallets (August 15, 2019), an accusation that Plaintiff was smoking during duty hours in an unauthorized location (August 16, 2019), and an accusation that Plaintiff had failed to timely request sick leave to attend a medical appointment (August 20, 2019).
>
> Also on August 16, 2019, Plaintiff's direct supervisor had a meeting with Plaintiff and his co-workers. During that meeting, the supervisor made the statement that 'what happens here stays here,' and then attempted to force every worker, including Plaintiff, to verbally confirm their agreement with the statement. Considering the timing of the meeting and the larger context of Plaintiff's EEO complaint and reasonable accommodation request, this meeting was conducted as an effort to intimidate and silence Plaintiff – all in the hopes of stopping him from filing his formal complaint.

*Id.*, ¶¶ 8-23.

Plaintiff alleges causes of action for disability discrimination, retaliation/reprisal discrimination, and harassment/hostile work environment. Plaintiff alleges Defendant's discrimination, retaliation, and harassment violated Sections 501 and 504 of the Rehabilitation Act (29 U.S.C. §§ 791, 794 – 794a). *Id*., ¶¶ 25, 31, 37, 42.

## II. PROCEDURAL BACKGROUND

**A.     Discovery Order**

The Court entered its Discovery Order on December 7, 2020. *See* Docket Entry # 18. Under "Disclosures," except as provided by paragraph 1(j), within thirty days after the scheduling conference, each party shall disclose to every other party certain information, including the following:

>   (h)     in a suit alleging physical or mental injury and damages from the occurrence that is the subject of the case, all medical records and bills that are reasonably related to the injuries or damages asserted or, in lieu thereof, an authorization permitting the disclosure of such medical records and bills;
>
>   (i)      in a suit alleging physical or mental injury and damages from the occurrence that is the subject of the case, all medical records and bills obtained by the disclosing party by virtue of an authorization furnished by the requesting party;

Docket Entry # 18, ¶ 1(h)(i). In addition, under the section titled "Additional Disclosures," each party shall provide to every other party, among other things, copies of "all documents . . . in the possession, custody, or control of the party that are relevant to the pleaded claims or defenses involved in the action." *Id*., ¶ 3(a). Paragraph 3(b) requires parties to provide "a complete computation of any category of damages claimed by any party to the action, making available for inspection and copying under Rule 34, the documents or other evidentiary material on which such

computation is based, including materials bearing on the nature and extent of injuries suffered." *Id*., ¶ 3(b). Additionally, Paragraph 3(c) directs parties to Local Rule CV-34.

Local Rule CV-34 provides, "Where a party's physical or mental condition is at issue, that party shall provide to the opposing counsel either the party's medical records or a signed authorization so that records of health care providers which are relevant to injuries and damages claimed may be obtained."

Paragraph 4 of the Discovery Order provides as follows:

> Discovery is limited to the disclosures described in Paragraphs 1 and 3 together with 25 interrogatories, 25 requests for admissions, [etc]... Any party may move to modify these limitations for good cause.

Docket Entry # 18 at ¶ 4. Paragraph 9 provides, "Any party entitled to receive disclosures may. . . serve upon a party a written statement. . . of any reason why the party entitled to receive disclosures believes that the disclosures are insufficient." *Id*. at ¶ 9. "The party allegedly entitled to receive disclosures may thereafter file a motion to compel." *Id*.

**B.    Docket Control Order**

The original Docket Control Order was entered December 7, 2020 (Docket Entry # 17). Plaintiff made his initial discovery disclosure on December 09, 2020 and served additional disclosures on December 22, 2020. Docket Entry #s 19, 21. Thereafter, an amended Docket Control Order was entered February 24, 2021. Docket Entry # 24. According to the amended Docket Control Order, the fact discovery deadline was April 30, 2021.[2] Docket Entry # 24.

---

[2] The Court recently entered a Second Amended Docket Control Order, setting this consent case for jury selection and trial starting September 21, 2021. Docket Entry # 45.

On April 5, 2021, Defendant served a Request for Production on Plaintiff requesting medical records and documents relating to claims for medical damages and emotional pain and suffering. *See* Docket Entry # 25-1. On April 21, 2021, Plaintiff informed Defendant he would not produce any additional documents. *Id*. at p.13. On April 22, 2021, Defendant filed its current motion to compel. *See* Docket Entry # 25.

### III. MOTION TO COMPEL

**A.     Defendant's assertions**

Defendant asserts Plaintiff has placed his physical and mental health at issue by claiming disability discrimination and claiming damages for physical injury and mental anguish.[3] Docket Entry # 25 at pp. 2-3. Defendant asserts the Local Rules and the Court's Discovery Order require disclosure of medical records or a signed authorization to obtain medical records when a party places health at issue. *Id*. at p. 3. According to Defendant, Plaintiff has failed to produce all relevant medical records or a medical release authorization, and he has also failed to provide a complete computation of any category of damages that support his claims and relief requested. *Id*. at p. 2. Defendant requests the Court compel Plaintiff to comply with the Court's mandatory disclosure requirements and Defendant's subsequently-served Request for Production of Documents, which seeks the following:

> Produce all documents Plaintiff used or referenced to answer the First Set of Interrogatories.
>
> Produce all Communications to or from individuals identified in Plaintiff's response to Defendant's First Set of Interrogatories.

---

[3] According to Defendant, courts have long held medical records are relevant to the litigation when Plaintiff puts a disability at issue. Docket Entry # 25 at p. 9. Defendant argues its Request for Production targets the documents and information required for Plaintiff to prove his *prima facie* case and for Defendant to argue against Plaintiff's claims. *Id*.

7

>Produce all reports from any expert Plaintiff identified in response to Defendant's Interrogatories.
>
>Produce all Statements or Communications to or from individuals who Plaintiff claims have information that supports Plaintiff's claim that Plaintiff was discriminated, retaliated against, and harassed including but not limited to those Statements and Communications which Plaintiff allege support these claims.
>
>Produce all Documents relating to Plaintiff's claim for economic damages.
>
>Produce any all Documents relating to Plaintiff's claim for medical damages, past and future emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life and any other nonpecuniary damages Plaintiff is asserting.
>
>Produce all Medical Records, relating to treatment received from a Medical care Provider for conditions that Plaintiff claims relate to the discrimination, retaliation, and harassment that Plaintiff alleges.
>
>Copies of the enclosed medical authorization form authorizing the release of any and all medical records, notes, and memoranda for each of the Medical Care Providers whom Plaintiff claims provided medical care related to the discrimination, retaliation and harassment Plaintiff alleges.
>
>Copies of the enclosed request for consent to release of information from individual records, VA Form 3288, authorizing the release of all medical reports, records, notes and memoranda from the Department of Veterans Affairs.
>
>Produce all Documents relating to Plaintiff's claim for non-economic damages, if any.
>
>Produce a copy of the enclosed personnel file authorization form authorizing the release of your personnel file from employers Plaintiff identified in Plaintiff's response to Defendant's First Set of Interrogatories, served concurrently herewith.
>
>Produce all Documents reflecting Your communications with all of Plaintiff's Medical Care Providers regarding the disability Plaintiff claims Plaintiff was discriminated upon.

Docket Entry #25-1.

Additionally, in the event Plaintiff produces medical authorizations and Defendant is required to obtain the medical records, Defendant requests the Court extend the April 30, 2021 discovery deadline to allow Defendant "time to obtain the medical records from the respective providers." Docket Entry # 25 at p. 10.

### B. Plaintiff's response

Plaintiff objects to Defendant's motion, presenting both procedural and substantive arguments.

### 1. Procedural arguments

Procedurally, Plaintiff argues (1) Defendant's Requests for Production falls outside the limits of discovery, and (2) The United States is not a party to the lawsuit. Docket Entry # 26 at ¶ 6. Plaintiff states Paragraph 4 of the Discovery Order limits discovery to disclosures described in Paragraphs 1 and 3. *Id*. at ¶¶ 8, 10. Focusing on Paragraphs 1 and 3, Plaintiff notes his initial disclosures were served on December 9, 2020 and additional disclosures were served on December 22, 2020. *Id*. at ¶ 11. Plaintiff argues Paragraph 9(a), in conjunction with Paragraph 4, gives Defendant opportunity to challenge and dispute the sufficiency of disclosures of the disclosures. *Id*. at ¶¶ 9, 12. Plaintiff contends Paragraph 4 requires Defendant to move to modify the discovery limitations to validly propound Request for Production upon Plaintiff. *Id*. at ¶ 14. According to Plaintiff, because Defendant did not move to modify, its Request for Production is procedurally inadequate and beyond the limits of discovery. *Id*.

Plaintiff further objects to the Request for Production because it was propounded upon Plaintiff by "Defendant[The] United States of America." *Id*. at ¶ 22. Plaintiff notes The United States of America is a legal entity separate and apart from its agencies or officers sued in an official capacity. *Id*. at ¶ 21. According to Plaintiff, Defendant's Request for Production should be propounded by Secretary of Defense Mark Esper, the proper Defendant. *Id*. at ¶¶ 19, 20. Plaintiff agrees to withdraw the opposition if undersigned counsel admits to a clerical mistake. *Id*. at ¶ 26.

9

   **2.      Substantive arguments**

   Substantively, Plaintiff disagrees with Defendant's argument that a *prima facie* case under the Rehabilitation Act requires Plaintiff to substantiate his disability and prove he is otherwise qualified to do the work. According to Plaintiff, because his disability stemmed from his service in the coast guard in 2004, his pre-existing disability is irrelevant to the alleged discrimination, retaliation, and hostile work environment claims from 2018 and 2019. *Id*. at ¶¶ 30-31. Plaintiff states he has medical records and billing for his disability for his broken back in 2004 but does not have medical records separate for the claims arising from this case. *Id*. at ¶ 31.

   Plaintiff also disputes that he relied solely on the VA disability classification. Plaintiff concedes the VA classification alone cannot prove disability but argues a combination of VA classification with other evidence satisfies the ADA standards imposed by the Rehabilitation Act. *Id*. at ¶ 32. Plaintiff points to multiple documents from his additional disclosures that purport to satisfy ADA stadards. *Id*. at ¶ 33, *See* Docket Entry #26-3.

   Finally, Plaintiff indicates the categories of damages Defendant seeks are not subject to exact computation. *Id*. at ¶ 39. Plaintiff asserts the court in *Burns* revealed, once more-than-nominal damages for mental anguish are in play, the amount to request and how to request it becomes a matter of trial strategy. *Id.* at ¶ 47 (citing *Burns v. Nielson*, Civil Action No. EP-17-cv-00264-DCG (W.D. Texas. Dec. 8, 2020)).

### C. Defendant's reply

#### 1. Procedural arguments

Defendant first argues its Request for Production falls squarely within Paragraphs 1 and 3 of the Discovery Order. Docket Entry # 25 at p. 8. Defendant argues Paragraph 4 of the Discovery Order is silent on any limitations on requests for production of documents. According to Defendant, the Discover Order limits the number of interrogatories, request for admissions, and depositions but does not prohibit the production of discoverable information. Defendant argues its Request for Production of documents was necessitated by Plaintiff's failure to comply with the Discovery Order.

Regarding the second procedural issue, Defendant concedes counsel made a scriber's error. *Id*. Defendant's counsel states he explained to Plaintiff that The United States of America is not inserting itself as a party. *Id*.

#### 2. Substantive arguments

Substantively, Defendant argues Plaintiff's medical condition is relevant to Plaintiff's claims and to Defendant's defenses. Docket Entry # 29 at p. 2. Defendant continues, Paragraph 1(h) requires Plaintiff to produce "all medical records and bills that are reasonably related to the injuries or damages. . . ." *Id*. at ¶ 3. According to Defendant, Plaintiff advances an unduly narrow reading of Paragraph 1(h), limiting production of medical records of damages arising from the occurrence. *Id*. Even if Plaintiff's narrow reading was correct, Defendant argues Plaintiff would still be obligated to provide the requested records because Plaintiff seeks mental anguish damages arising from Defendant's purported violations of the Rehabilitation Act. *Id*. According to Defendant, mental anguish damages, through the Plaintiff's own pleading, arise out of the occurrence at issue. *Id*.

Defendant argues Plaintiff also ties his physical health to the occurrence by alleging discrimination, retaliation, and harassment continued when he was reassigned to a job position that forced him to violate his lifting, squatting, and bending restrictions. *Id*. According to Defendant, by alleging Defendant's actions exacerbated his pre-existing back injury, Plaintiff alleges a claim arising out of the occurrence at issue, necessitating release of relevant medical records even under Plaintiff's narrow reading of Paragraph 1(h). *Id*. at ¶ 4. Defendant further argues even if Paragraph 1(h) did not compel disclosure of the records, Paragraph 3 certainly would because the records are relevant to Plaintiff's pleaded claims or defenses.[4] *Id*.

Finally, regarding damages, Defendant quotes Paragraph 3, which requires production of "a complete computation of any category of damages claimed by any party to the action, making available for inspection and copying as under Rule 34," but does not offer an argument against Plaintiff's position that the damages Defendant seeks is not subject to exact computation. Docket Entry # 29.

### IV. GOOD CAUSE TO ALTER EXISTING SCHEDULE

**A.**     **Applicable law**

The Court's Amended Docket Control Order established April 30, 2020 as the fact discovery deadline. Docket Entry # 24. Defendant filed its motion to compel on April 22, 2020.

---

[4] Paragraph 3 requires Plaintiff to disclose "a copy of all documents . . . that are relevant to the pleaded claims or defenses involved in the action," and "a complete computation of any category of damages claimed by any party to the action... the documents and evidentiary material on which such computation is based, including materials bearing on the nature and extent of injuries suffered."

Under Federal Rule of Civil Procedure 16(b), federal courts have the clear authority to control and expedite the discovery process through a scheduling order. *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990). Consistent with the authority vested in the district court by Rule 16, the trial court is granted broad discretion to preserve the integrity and purpose of such pretrial orders. *See id.* (quoting *Hodges v. United States*, 597 F.2d 1014, 1018 (5th Cir. 1979)); *see also Bilbe v. Belsom*, 530 F.3d 314, 317 (5th Cir. 2008) (affording district courts a great deal of deference in determining whether to modify scheduling orders especially where the record suggests the movant repeatedly demonstrated a lack of diligence). Scheduling orders and their enforcement are regarded as essential in ensuring that cases proceed to trial in a just, efficient, and certain manner. *Gauthier v. Union Pac. R.R. Co.*, Civil Action No. 1:07-CV-12 (TH/KFG), 2009 WL 10676647, at *3 (E.D. Tex. Mar. 10, 2009) (citing *Hernandez v. Mario's Auto Sales, Inc.*, 617 F. Supp. 2d 488, 495 (S.D. Tex. 2009) (citations omitted)).

Federal Rule of Civil Procedure 16(b)(4) provides that deadlines in a schedule "may be modified only for good cause and with the judge's consent." The Fifth Circuit has "interpreted Rule 16(b)(4)'s 'good cause' standard to require the movant to 'show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *Puig v. Citibank, N.A.,* 514 Fed. Appx. 483, 2013 WL 657676, at *5 (5th Cir. Feb. 22, 2013) (quoting *S & W Enterprises, L.L.C. v. Southtrust Bank of Alabama, NA,* 315 F.3d 533, 535 (5th Cir.2003)).

The Fifth Circuit has stated four factors trial courts must consider when determining whether good cause exits to allow a deviation from the court's scheduling order: (1) the explanation for the failure to meet the deadline; (2) the importance of the modification of the deadline; (3) potential prejudice in allowing the modification; and (4) the availability of a continuance to cure such

prejudice. *Reliance Ins. Co. v. The Louisiana Land & Exploration Co.*, 110 F.3d 253, 257 (5th Cir.1997); *Geiserman*, 893 F.2d at 791.

**B.    Discussion**

In assessing good cause, the trial court primarily considers the diligence of the party seeking to alter the existing schedule. *See Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan.1995); *see also Smith v. BCE, Inc*., 225 Fed. Appx. 212, 217 (5th Cir. 2007). The party's explanation for seeking relief from the schedule must demonstrate that it could not have met the deadline despite its diligence. Plaintiff filed his initial disclosures on December 9, 2020 and his additional disclosures on December 22, 2020. Defendant had disclosures in hand, yet for four months did not challenge their sufficiency.

On April 5, 2021, less than one month before the fact discovery deadline, Defendant propounded its Request for Production upon Plaintiff for relevant medical information. Unable to come to an agreement with Plaintiff, on April 22, 2021, Defendant filed a motion to compel asking the Court to compel Plaintiff to release the requested records or provide a medical release authorization. In the event Plaintiff produces medical authorizations, Defendant requests the discovery deadline be extended to allow it time to obtain records from Plaintiff's providers.

The Court is not convinced Defendant could not have met the deadline despite its diligence. However, the parties' ongoing disagreement over the interpretation of the Court's Discovery, in conjunction with the Federal and Local Rules, contributed to the timing issue. As explained in more detail below, the Court disagrees with Plaintiff's narrow interpretation. Rather, as addressed below, the Court finds Plaintiff is required to produce, upon request, medicals records or a medical authorization where, as in the case here, a party's physical or mental condition is at issue. Thus, as

to the second good cause factor, the Court finds the requested medical records relevant and important, not just for this case but also for related case 5:21cv42.

Having further considered the other two factors (the minimal prejudice to Plaintiff and the availability of a continuance to cure any such minimal prejudice), the Court finds good cause to modify the docket control order for the limited purpose of re-opening fact discovery as to the discovery now sought by Defendant in its motion to compel. The Court now considers the substance of Defendant's motion.

## V. DISCUSSION

### A.   Procedural issues

Plaintiff argues Defendant was precluded from propounding its Request for Production upon Plaintiff because Defendant did not take proper action to challenge and dispute the adequacy of Plaintiff's disclosures under Paragraphs 4 and 9 of the Discovery Order. Defendant argues Paragraph 4 is silent on Request for Production of documents.

Neither Paragraph 4 nor Paragraph 9 preclude Defendant from propounding a Request for Production under Rule 34 or from filing a motion to compel. Taking into consideration the Federal Rules, Local Rules, and the Discovery Order, the Court finds Defendant properly served a Request for Production.

The Court also finds without merit Plaintiff's second procedural argument. Plaintiff objects to the Request for Production because it was propounded upon Plaintiff by "Defendant United States of America." Docket Entry # 26 at ¶ 5. Plaintiff agrees to drop this basis for opposition if undersigned counsel admits to the clerical mistake. *Id*. at ¶ 26. Counsel admits in its reply it had made a scriber's error. Docket Entry # 29 at p. 4.

**2.    Substantive issue**

Plaintiff disagrees with Defendant's argument that Plaintiff must establish he suffered a disability during the time of injury. According to Plaintiff, disability status can be substantiated by combining the VA classification from the Department of Veterans Affairs with evidence from the additional disclosures. Plaintiff also denies having medical records arising from his claims of discrimination, retaliation, and hostile work environment in 2018 and 2019.

In the Eastern District of Texas, Local Rule CV-26 provides guidance in considering whether information is relevant for discovery. The rule provides information is relevant if:

> (1) it includes information that would not support the disclosing parties' contentions;
> (2) it includes those persons who, if their potential testimony were known, might reasonably be expected to be deposed or called as a witness by any of the parties;
> (3) it is information that is likely to have an influence on or affect the outcome of a claim or defense;
> (4) it is information that deserves to be considered in the preparation, evaluation or trial of a claim or defense; and
> (5) it is information that reasonable and competent counsel would consider reasonably necessary to prepare, evaluate, or try a claim or defense.

*Matter of AET*, 2018 WL 4201264, at *2 (quoting E.D. Tex. Local Rule CV-26(d)). Relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Id.* (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947))).

The Court finds Plaintiff's current medical records, if any, are relevant. As urged by Defendant, Plaintiff put his mental and physical health at issue by claiming mental anguish damages arising out Defendant's actions and claiming Defendant forced him to violating his physical

restrictions. Finding the medical records relevant, the Court grants Defendant's motion to compel the production of Plaintiff's medical records or a medical release authorization. Otherwise, Defendant's motion is denied.

## VI. CONCLUSION

Based on the foregoing, it is

**ORDERED** that Defendant's Motion to Compel (Docket Entry # 25) is **GRANTED** as modified below. It is further

**ORDERED** that to the extent it has not already done so, within thirty (30) days from the date of entry of this Order, Plaintiff shall produce to Defendants the following: (1) disclosure of every healthcare provider that has provided treatment to Plaintiff in the ten years preceding this order; and (2) a written medical authorization (on a form to be provided by Defendant) and an executed VA Form 3288 (Department of Veterans Affairs - Request for and consent to Release of Information from Individual's Records) enabling Defendant to retrieve Plaintiff's medical records for the ten years preceding this order.[5]

**SIGNED this 23rd day of July, 2021.**

*Caroline M. Craven*
CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE

---

[5] The Court notes the parties have agreed to these additional disclosures in the proposed Discovery Order recently submitted in related case 5:21cv42.